'Wheelek, J.
The plaintiff, suing for the use of his wife, Eliza P. Pitts, filed his petition alleging that the defendants’ intestate, Geo. W. Reynolds, in his life time executed and delivered to the said Eliza a writing in the terms following viz.:
“ Hbbmoso, October 18, 1842.
“ On the first of December next, I promise to furnish Eliza P, Pitts a good negro fellow to work for her, until I pay her a thousand *(424) dollar note of mine that she holds against me, or return her the negro woman Charlotte again.” . * * *
The petition proceeds with the averments that this writing “ was made to secure more perfectly and completely the purchase money for the aforesaid negro woman Charlotte, and as a condition to the sale of said slave, which on the day and date mentioned was sold and conveyed by James R. Vickers, trustee of Eliza P. Pitts, and for which sale the said Geo. W. Reynolds executed his note, on the day and date above written, to the said James R. Vickers, for the sum of one thousand dollars; which note has this day been sued upon.” Then follows the breach, assigning a non-compliance with the contract, both by the intestate in his lifetime, and the defendants since his death, to the damage of the plaintiff two thousand dollars.
The plaintiff prays “that specific performance of said contract be-awarded, or judgment for the value of the services of said negro man, in said writing mentioned (which your petitioner avers to'be three hundred dollars), or for the payment of the value of said slave, which your petitioner avers to be one thousand dollars, together with the sum of three hundred dollars, the increased value of said slave, together with interest, costs and damages.”
The defendants excepted to the legal sufficiency of this petition,, alleging that it set forth no cause of action.
The court adjudged the petition not sufficient in law to enable the plaintiff to maintain his action, and there being no application for permission to amend, dismissed the cause and the plaintiff appealed.
The writing set forth neither expresses nor imports within itself a consideration. We can only conjecture what the consideration really was from the averments which follow, and seek to connect it with another transaction — the contract of sale of the negro woman, Charlotte. If, in truth, it was but a part of a valid contract, and not a mere nuckm jpactum (which on its face it appears to be), then the entire contract should have been distinctly set forth in all its parts in order that the court might ascertain the rights of the parties under the contract, and award the appropriate relief upon the whole merits. When a party can enforce his rights by one action, he ought not to be permitted to resort to many; and especially where there is but one entire contract and cause of action.
The writing set forth is ambiguous and the averments afford but faint lights to guide us to any certain conclusion respecting its legal import. What are we to understand from it? That there had been a sale absolute of the negro woman Charlotte, and that by the contract the decedent had undertaken to “ furnish the fellow’ ” to secure the *(425) payment of the price, and to work for the interest of the money until it was paid? Or was the sale of the woman conditional only, and was it optional with the decedent to pay for, or return her; and was he to “ furnish the fellow ” to work, either for the use of the money or as an equivalent to the services, of the woman until he should make his election? Or had Mrs. Pitts the privilege of demanding a restoration of the woman on the happening of some future event, as the default of the decedent to make prompt payment; and was the “ fellow ” to be “ furnished ” by the decedent (at the maturity of the note) as a pledge for his faithful performance or indemnity in case of his failure? These several interpretations are suggested, and although one may be more probable than another we do not feel at liberty to supply, by even probable conjecture, defects arising from the want of a full and clear statement of the facts of the transaction out of which the rights of the plaintiff are supposed to have arisen. The exceptions admitted the truth of every fact well pleaded; but there are no facts averred and set forth with such certainty and precision as to disclose any definite rights upon which a good cause of action may be seen to have arisen; and the court may certainly know what judgment to pronounce.
The party may indeed have rights; and if so, where the defects in the statement of his cause of action were indicated, he should have obtained leave to amend and so have amended his petition, as to present the facts which constituted his cause of action with such clearness and certainty, that in case they were admitted or proved, there should be no doubt as to the legal consequence and conclusion resulting .therefrom, and what judgment the court ought to render. But if, after exceptions sustained, the party will not amend but rests the cause upon his defective and insufficient pleading, on appeal to this court we can afford him no relief. He must abide the consequence of his election in the management of his cause below; and if he should become the sufferer thereby it will not be the fault of the law, which affords him ample opportunity to amend, but the consequence of his own temerity in refusing to avail himself of the benefits extended by its benign and liberal provisions.
The petition before us is ambiguous, uncertain and defective, and wholly insufficient to enable the plaintiff to maintain his action. We are of opinion, therefore, that the judgment be affirmed.